## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**STUART MICHAEL SIMONSEN**,

      Debtor.

Case No. **14-60015-7**

**BdS QUANT CAPITAL, LLC** and **BdS QUANT, LLC**,

      Plaintiffs.

-vs-

**STUART MICHAEL SIMONSEN**,

      Defendant.

Adv No. **14-00008**

### MEMORANDUM of DECISION

At Butte in said District this 18th day of November, 2014.

The Plaintiffs filed a complaint commencing this Adversary Proceeding on March 18, 2014, seeking to except the sums of $19,284,288.52 and $4,292,666.36 from the Debtor/Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C. § 523(a)(6), 11 U.S.C. § 523(a)(19)(A)(ii) and/or § 523(a)(19)(B)(i). Trial in this matter was scheduled to commence on December 8, 2014, but by agreement of the parties, has been continued without date. Currently pending in this Adversary Proceeding is the Defendant's Motion for Summary Judgment filed October 15, 2014. The Defendant's motion is accompanied by a memorandum in support, a statement of uncontroverted facts and the affidavit of the

1

Defendant, Stuart Michael Simonsen ("Simonsen").

## JURISDICTION

This Court has jurisdiction of the above-captioned Adversary Proceeding under 28 U.S.C. § 1334(b). The Plaintiffs' requests to except certain debts from Simonsen's discharge are core proceedings under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

BdS Quant Capital, LLC ("BdS Quant Capital") is an Illinois limited liability company that is in the business of securing investors who wish to trade futures using software employing mathematical logic that BdS Quant Capital licenses from third parties. BdS Quant Capital was formed around April 20, 2007, and Art Bushonville ("Bushonville"), the Becca de Souza 2003 Irrevocable Trust and Simonsen were the initial members of BdS Quant Capital. The initial officers of BdS Quant Capital were as follows: Bushonville was the Chief Executive Officer; Simonsen was the Chief Technology Officer; and Mark de Souza was the Chief Operating Officer. Bushonville, Simonsen and Mark de Souza were also identified in BdS Quant Capital's operating agreement as initial Managers. BdS Quant Capital's operating agreement does not restrict its managers from conducting other business or activities, but does specifically preclude managers from engaging in any other business or activity that competes with BdS Quant Capital's business. The members of BdS Quant Capital agree in paragraph 7.13(a) of the Operating Agreement "that the business of [BdS Quant Capital] is highly competitive and that any participation in, either directly or indirectly, any 'Competitor' . . . would be highly injurious[.]" The operating agreement details what the members can and cannot do during a defined restriction period.

2

BdS Quant Capital contends that in 2007, it secured Karla Commercial S. A. as a client. Karla Commercial S.A. provided an initial investment of $1,500,000, and later notified BdS Quant Capital that it would be depositing an additional $10,000,000.00 between March 11, 2008, and March 17, 2008.  In March of 2008, Simonsen gave notice that he was resigning as a manger of BdS Quant Capital.  According to BdS Quant Capital, Simonsen then began to conduct business with Karla Commercial S.A. in his individual capacity and in direct competition with BdS Quant Capital.

Thereafter, Simonsen contends he requested, without success, an accounting and access to BdS Quant Capital's records and financial documents.  On May 8, 2008, Simonsen filed a Complaint for Production of Company Records and for an Accounting against BdS Quant Capital, LLC, in the Circuit Court of Cook County, Illinois, County Department - Chancery Division, Cause No. 08 CH 16999 seeking injunctive relief and to compel BdS Quant Capital to provide Simonsen access to BdS Quant Capital's records and financial documents, and to account for all transactions in connection with the conduct of BdS Quant Capital since its inception.

BdS Quant Capital, in response to Simonsen's complaint, filed on June 9, 2008, a Complaint and Counter-Claim for Breach of Fiduciary Duty, Injunction, Damages, and Other Relief , alleging breach of fiduciary duty, breach of the Operating Agreement, and for an accounting from Simonsen.  In late April 2009, BdS Quant Capital, LLC and Simonsen executed a Settlement Agreement and Mutual Release.  The Settlement Agreement and Mutual Release is nine pages long, plus a tenth page for signatures and reads in part:

      2.    Simonsen hereby grants, and BdS hereby accepts, a non-exclusive,

non-transferable and non-assignable right to use the Trading Software Property, Trading Activities and Trading Signals in connection with its trading activities subject and pursuant to the terms and conditions of this Agreement and a forthcoming license agreement to be entered into between Simonsen and BdS, for a term of five (5) years commencing on the Effective Date of this Agreement. During this five (5) year term, Simonsen agrees to fully support the Trading Software Property that is utilized by BdS.  Simonsen will provide to BdS a live trading screen for the Trading Software Property, and Simonsen will set the initial parameters of the Trading Software Property to the exact parameters used for Karla Commercial, S.A. dated January 4, 2008.  The Trading Software Property will allow defined changes supported in whole by Simonsen.  Simonsen will provide updates, parameter changes, upgrades and related support for the Trading Software Property, Trading Activities, and Trading Signals whenever such is performed by him or one of his representatives.

* * *

5.    Because this is a non-exclusive license of the Trading Software Property, BdS acknowledges that Simonsen may have his own Customers who receive Trading Signals from the Trading Software property.  BdS and Simonsen agree not to solicit, or encourage or cause anyone else to solicit, each- other's Customers during the term of this Agreement and a forthcoming license agreement to be entered into between BdS and Simonsen.  BdS and Simonsen further agree to keep as confidential the names/identities of any investors and Customers, and potential investors and Customers, of each other.  Simonsen agrees that neither he nor his representatives or agents shall communicate in any context, method or manner with BdS's investors and Customers, and potential investors and Customers, without BdS's permission and participation in all such communications.

6.    Simonsen will deposit a tamper-proof, sealed copy on a disc of the encrypted object/source code of the Trading Software Property with an escrow agent mutually agreed upon by the Parties.  Prior to the object/source code Trading Software Property disc being deposited with the escrow agent, Simonsen shall made the object/source code available to a representative selected by BdS for a reasonable amount of time, with Simonsen present during the meeting, to participate and demonstrate that the object/source code is operable.  This demonstration shall take place in the office of the escrow agent.  BdS shall pay all costs associated with a source code escrow arrangement.  The Parties must agree on a mutually acceptable object/source code escrow agreement prior to Simonsen's depositing said object/source code disc with the escrow agent, and Simonsen will deposit said object/source code with the escrow agent within three (3) business days after the Parties execute said object/source code escrow

4

agreement.  The parties agree that the escrow agreement must be completed and agreed to withing 30 days of execution of this agreement or the sealed copy will be deposited in good faith with the trustee.

* * *

11.    Within five (5) days after the date the last Party executes this Agreement, counsel for the Plaintiff/Counter-Defendant shall provide notice and file an agreed motion with the Court for dismissal of the Lawsuit with prejudice, and seek the entry of an agreed order of dismissal which is attached hereto as Exhibit A.  The Parties approve the form and substance of the dismissal order attached as Exhibit A.  The Parties agree that the Court shall retain jurisdiction to enforce the terms of this Agreement.

* * *

17.    Each Party . . . hereby irrevocably and unconditionally release and forever discharge all other Parties . . . from any and all actions, claims, liens, encumbrances, past or present, and their future effects, liabilities damages, attorney's fees or costs, charges, liabilities, obligations, covenants, benefits, compensation of any nature whatsoever, now accrued, or which may hereafter accrue, whether known or unknown, which each Party may have, had or hereafter can, shall or may have against any other Party, for, upon or by reason of (a) any matter asserted or which could have been asserted in the Lawsuit, Complaint or Counter-Claim, (b) any matter which is in any way related to the allegations made in the Lawsuit, Complaint or Counter-Claim, and (c) all matters and disputes which are based upon, arising from, or related to the formation and/or operation of BdS.  This release, however, does not include any claims arising out of a failure of a Party to perform in conformity with the terms of this Agreement.

* * *

33.    Any waiver by either Party of any default or breach of this Agreement shall not constitute a waiver of any provision of this Agreement or of any subsequent default or breach of the same or a different kind.

The Agreed Order referenced in paragraph 11 of the Settlement Agreement and Mutual

Release dismissing the Illinois action was entered on April 27, 2009.  On April 30-2009, Mark de

Souza and Bushonville executed a resolution that terminated all of Simonsen's membership

interests, rights and obligations in BdS Quant Capital.  Also in accordance with the Settlement

Agreement and Mutual Release, Simonsen, as Licensor, and Mark de Souza, on behalf of BdS

Quant Capital, the Licensee, executed on July 6, 2009, a License Agreement.  The License

Agreement, consistent with the Settlement Agreement and Mutual Release, provides in part:

> 6.1   Licensee acknowledges that Licensor may have his own Customers who receive Trading Signals from the Trading Software Property.  Licensor and Licensee agree not to solicit, or encourage or cause anyone else to solicit, each other's Customers during the term of this Agreement, and for a period of two (2) years after this Agreement terminates.  This Section 6.1 shall survive termination of this Agreement.

* * *

> 6.5   Licensor agrees to disclose and provide to Licensee the status, returns, updates, modifications, and performance of the Trading Software Property on a quarterly basis.

> 6.6   Throughout the term of this Agreement, Licensor will provide to Licensee the Trading Software Property's historical and performance data within ten (10) business days of the first day of April, July, October and January of each calendar year that this Agreement is in effect.

* * *

**Article 8.  Source Code Escrow.**

> 8.1   Licensor will deposit a tamper-proof, sealed copy on a disc of the unencrypted object/source code of the Trading Software Properly [sic] with an escrow agent mutually agreed upon by the parties and pursuant to a mutually acceptable escrow agreement.  Prior to the object/source code Trading Software Property disc being deposited with the escrow agent, Licensor shall make the object/source code available to a representative selected by Licensee for a reasonable amount of time, with Licensor present during the meeting, to participate and demonstrate that the object/source code is operable.  This demonstration shall take place in the office of the escrow agent.  Licensee shall pay all costs associated with a source code escrow arrangement.  The Parties must agree on a mutually acceptable object/source code escrow agreement prior to Licensor's depositing said object/source code disc with the escrow agent, and Licensor will deposit said object/source code disc with the escrow agent within three (3) business days after the parties execute said object/source code escrow agreement.  The parties agree that the escrow agreement must be completed and

6

agreed to within thirty (30) days of execution of this agreement or the sealed copy will be deposited in good faith with the escrow agent.

8.2    Upon termination of the five (5) year term provided for in this Agreement, the escrow agent shall immediately release the object/source code to Licensor or his designee.

8.3    The Parties also agree that in the event of Licensor's lack of cooperation and support defined in Article 6 above, . . .  the possession of the disc on deposit with said escrow agent will revert immediately to Licensee for its continued, uninterrupted use during the pendency of said five (5) year terms of this Agreement or until such disability is removed, whichever is sooner, and Licensee shall return said disc and all other trading Software Property, and copies thereof, to Licensor or his successors/assigns at the end of said five (5) year terms or until such disability is removed, whichever is sooner.

* * *

## Article 11.  Non-Circumvention; Confidentiality.

11.1    During the term of this Agreement and for two (2) years after the termination of this Agreement, either party that receives ("Receiving Party") information that is subject to this Agreement from the other party ("Disclosing Party") and either parties members, managers, officers and directors, separately and individually, will not make any effort to circumvent the terms of this Agreement in an attempt to gain the benefits or considerations granted to it under the Agreement by taking any actions to directly or indirectly gain the benefits of the confidential information or Customer relationships, including but not limited to contracting directly with any Customer of the other party.

11.2    The Receiving Party agrees that the unauthorized disclosure or use of confidential information or gaining benefits from Customer relations will cause irreparable harm and significant injury, which may be difficult to ascertain.  The Receiving Party recognizes that its violation of this Agreement could cause the Disclosing Party irreparable harm and significant injury, the amount of which may extremely difficult to estimate, thus, making any remedy at law or in damages inadequate.  Therefore, the Receiving Party agrees that the Disclosing Party shall have the right to apply to any court of competent jurisdiction for an order restraining any breach or threatened breach of this Agreement and for any other relief the Disclosing Party deems appropriate.  This right shall be in addition to any other remedy available to the Disclosing Party in law or equity.

11.3    Upon the written request of the Disclosing Party, the Receiving

7

Party shall return to it (or erase or destroy) all materials that contain or embody any confidential information of the Disclosing Party, including, but not limited to, all computer programs, documentation, notes and copies thereof.  Return or destruction of such material shall not relieve the recipient of its obligations of confidentiality.  The recipient will certify that it has complied with the provisions of this provision.

11.4    Upon written notice of Licensee or Licensor, Licensor shall immediately cease and desist any unauthorized communication with a Customer. This provision shall not preclude Licensee from exercising it [sci] full rights and remedies against Licensor in equity and in law and under this Agreement.

11.5  This Article shall survive the termination of this Agreement.

On January 8, 2010, BdS Quant, LLC and GMSDEVCO, LLC entered into a separate License Agreement relating to the licensing of new software and the trading signals generated by the new software.  The term of the License Agreement between BdS Quant, LLC and GMSDEVCO, LLC is for a period of ten years.  Paragraphs 6.1, 6.5, 6.6., 8.1, 8.2 and 8.3 of the BdS Quant License Agreement are identical to the License Agreement between Simonsen and BdS Quant Capital; Article 11 dealing with confidential information is changed.

BdS Quant Capital and BdS Quant contend that thereafter Simonsen terminated their access to all Trading Software, solicited their clients and refused to place a copy of the Trading Software in escrow.  On October 28, 2010, BdS Quant Capital filed with the Illinois court a motion to enforce settlement agreement claiming numerous breaches of both the settlement agreement and license agreement by Simonsen.  On February 28, 2011, the Illinois court denied the motion to enforce settlement agreement "because the Settlement Agreement has been superseded by the License Agreement[.]"

Also in February of 2011, Simonsen and GMS Devco LLC filed in the Circuit Court of Cook County, County Department, Chancery Division, Cause No. 11 CH 05557 a complaint

8

against BdS Quant Capital and BdS Quant seeking a declaration that BdS Quant Capital and BdS Quant were in breach or default of the License Agreements and seeking recision of the same. On July 15, 2011, BdS Quant Capital and BdS Quant filed a counterclaim for injunctive and other relief. On April 19, 2013, Simonsen and GMS Devco LLC's complaint was dismissed for lack of prosecution and their answer and affirmative defenses to BdS Quant Capital and BdS Quant's counterclaim was stricken. As to BdS Quant Capital and BdS Quant's counterclaim, the default of Simonsen and GMS Devco, LLC was entered on May 17, 2013, and in June of 2013, judgment was entered in favor or BdS Quant Capital against Simonsen in the amount of $19,284,288.52, and judgment was entered in favor of BdS Quant against GMS Devco, LLC in the amount of $4,292,666.36.

Simonsen sought protection under Chapter 7 of the Bankruptcy Code on January 10, 2014. BdS Quant Capital and BdS Quant commenced this Adversary Proceeding on March 18, 2014. BdS Quant Capital and BdS Quant assert four claims for relief in their complaint. Simonsen seeks dismissal of all four claims.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material

facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if sufficient evidence exists for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226 (D.Mont. May 15, 2012).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.*

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court. As to materiality, the applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine. If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not be granted. *Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. Though the *Anderson* Court stated that at the summary judgment stage the judge's function is not to

10

weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249–50. In other words, the non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts*.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### APPLICABLE LAW and DISCUSSION

All four claims for relief in the Plaintiffs' complaint stem from 11 U.S.C. § 523. It is well-settled that the Bankruptcy Code's central purpose is to provide a fresh start to the honest but unfortunate debtor. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, under certain circumstances, a creditor may seek to except from a debtor's discharge certain debts. *See* 11 U.S.C. § 523(a). Nevertheless, consistent with effectuating the underlying purposes of the Bankruptcy Code, exceptions to discharge under § 523 are to be narrowly construed. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992). Notwithstanding the weighty burden, in order to prevail, a creditor need only establish the elements of nondischargeability under 11 U.S.C. § 523, by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. at 287-88.

I.      11 U.S.C. § 523(a)(2)(A)

Plaintiffs, in their first claim for relief, seek to except $19,284,888.52 from Simonsen's discharge pursuant to 11 U.S.C. § 523(a)(2)(A) based upon Simonsen's failure to place a copy of the licensed Trading Software in escrow. Plaintiffs allege that Simonsen represented that he would place a copy of the licensed Trading Software in escrow, that such representation was not

true, that Simonsen knew the representation was not true when made, that Simonsen intended that BdS Quant Capital rely upon the representation, that BdS Quant Capital did reasonably rely upon the representation, and that BdS Quant Capital has been damaged as a result of Simonsen's fraud in the amount of $19,284,888.52.

The Bankruptcy Code excepts from discharge any debt for money, property, services, or credit obtained by false pretenses, a false representation, or actual fraud. § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009) (citing *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." *Id*. (citing *Slyman*, 234 F.3d at 1085).

Simonsen's argument for summary judgment on the first count is three-fold. First, Simonsen argues that breach of contract is not fraud. Second, Simosen argues that under the Settlement Agreement and Mutual Release of April 23, 2009, BdS Quant Capital, as a condition precedent to Simonsen placing the object/source code of the Trading Software in escrow, was required to set up an escrow arrangement. Simonsen maintains that BdS Capital Quant failed to set up the escrow arrangement and that it was therefore BdS Quant Capital that failed to abide by the Settlement Agreement and Mutual Release. Third, Simonsen argues that no claim of fraud

12

can be made through the point of the Settlement Agreement and Mutual Release because of the mutual releases contained therein.

As to Simonsen's first argument, the Court agrees that "failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud." *In re Yaikian*, 508 B.R. 175 (Bankr. S.D. Cal. 2014) (quoting *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 166 (Bankr. E.D.Pa.2008)).  However, "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)."  *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir.1989).

In the case *sub judice*, Plaintiffs allege, and Simonsen does not dispute, that a copy of the Trading Software was never placed in escrow.  While such failure may constitute a mere breach of contract, it may also result in a § 523(a)(2)(A) claim if Plaintiffs prove at trial that Simonsen did not intend to place a copy of the licensed Trading Software in escrow at the time he entered into the Settlement Agreement and/or licensing agreements.  Simonsen's mere assertion that "breach of contract is not fraud" does not satisfy his summary judgment burden.

Next, Simonsen argues that BdS Capital Quant failed to set up the escrow arrangement and that it was therefore BdS Quant Capital that failed to abide by the Settlement Agreement and Mutual Release.  Interestingly, Simonsen's argument is based solely on the Settlement Agreement and Mutual Release, and not the License Agreement.  As argued by Simonsen, the License Agreement between Simonsen and BdS Quant Capital "was entered into approximately two and one-half (2½) months after the Settlement Agreement and Mutual Release," Memorandum, docket no. 15, p.5, and "governed the relationship between the parties." Statement of Uncontroverted Facts, docket no. 16, p. 3.

13

Putting aside the issue of which document governs, the April 23, 2009, Settlement Agreement and Mutual Release provides in paragraph 6 that if the escrow agreement was not completed and agreed to within 30 days that "the sealed copy [of the object/source code of the Trading Software Property disc would] be deposited in good faith with the trustee."  Similar to the Settlement Agreement and Mutual Release, the July 6, 2009, License Agreement provides in paragraph 8.1 that if an escrow agreement was not completed and agreed to within thirty days that "the sealed copy [of the unencrypted object/source code of the Trading Software would] be deposited in good faith."

Simonsen has not deposited the object/source code.  Plaintiffs raise a material issue of fact on this issue that precludes summary judgment.

Finally, Simonsen complains "that there can be no claim of fraud against Mr. Simonsen through the point of the Settlement Agreement as all claims had been released, whether known or unknown."  Simonsen's Statement of Uncontroverted Fact 9 reads: "On or about February 28, 2011, the Judge denied BdS Quant Capital, LLC's Motion to Enforce Settlement Agreement stating that the Licensing Agreement governed the relationship between the parties[.]" The Order of February 29, 2011, denied BdS Quant Capital's motion to enforce the settlement agreement because the settlement agreement had been "superseded by the License Agreement[.]" Simonsen alleges not a single fact regarding his failure to place a copy of the licensed Trading Software in escrow, as required by the July 6, 2009, license agreement.  Additionally, as noted by the Plaintiffs, the release in the settlement agreement deals with "(a) any matter asserted or which could have been asserted in the Lawsuit, Complaint or Counter-Claim, (b) any matter which is in any way related to the allegations made in the Lawsuit, Complaint or Counter-Claim, and (c) all

14

matters and disputes which are based upon, arising from, or related to the formation and/or operation of BdS[.]"  The release, however, specifically did not release "any claims arising out of a failure of a Party to perform in conformity with the terms of this Agreement."  Plaintiffs' claim at this juncture is that Simonsen made certain promises with a positive intent not to perform or without a present intent to perform.  Based upon the record, Simonsen's request for summary judgment on Plaintiffs' § 523(a)(2)(A) claim fails.

II.      11 U.S.C. § 523(a)(4)

Plaintiffs' claim under § 523(a)(4) is based on the allegation that "Simonsen committed fraud and defalcation while acting in a fiduciary capacity, embezzled, or stole money, property, or services from BdS Quant and BdS Quant Capital., namely Simonsen took clientele from BdS Quant and BdS Quant Capital and converted the clientele to his own use and profit."  Simonsen argues that this claim fails because he could not be a fiduciary after he ceased being a member or manager of BdS Quant Capital, and that, in addition, any claims arising prior to the settlement agreement were specifically released.

As a preliminary matter, the Court cannot find where Simonsen asserts any facts or raises any arguments that speak to the embezzlement or larceny portion of Plaintiffs' Second Claim for Relief.  In addition, Simonsen's argument is limited to claims that arose prior to the April 23, 2009, Settlement Agreement and Mutual Release.

Simonsen argues in his Memorandum filed at docket no. 15 that Plaintiffs' fraud or defalcation while acting in a fiduciary capacity claim fails because Plaintiffs' discovery answer regarding paragraph 24 of the complaint refers to Simonsen's actions "[w]hile a managing member of BdS Quant Capital[.]"  The Court agrees that Plaintiffs' discovery answer regarding

15

paragraph 24 of the complaint, when read in isolation, tends to support Simonsen's contention that the Plaintiffs' Second Claim for Relief is limited solely to actions taken by Simonsen while he was a member and manager of BdS Quant Capital, and prior to the April 23, 2009, Settlement Agreement and Mutual Release.  However, Plaintiffs argue, albeit inartfully, that even if the Settlement Agreement released Simonsen from liability arising from his actions as a member of BdS Quant Capital, Simonsen was nonetheless a fiduciary by virtue of the license agreements and the fact that he held the Trading Software in trust on his personal server, and that subsequent to the entry of settlement with BdS Quant Capital, Simonsen usurped BdS Quant Capital clients. Given Simonsen's failure to address either embezzlement or larceny, and given Simonsen's failure to address whether he might have been a fiduciary after the settlement agreement, the Court denies Simonsen's request to dismiss Plaintiffs' Second Claim for Relief.

III.     11 U.S.C. § 523(a)(6)

Plaintiffs allege in their Third Clam for Relief that Simonsen willfully and maliciously injured property of BdS Quant and BdS Quant Capital by using information gained from BdS Quant and BdS Quant Capital to solicit clients of BdS Quant and BdS Quant Capital and causing those clients to abandon their trading relationships with BdS Quant and BdS Quant Capital and transfer that trading relationship to Simonsen.  Subsection 523(a)(6), excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.  Whether a particular debt is for willful and malicious injury by the debtor to another or the property of another under § 523(a)(6) requires application of a two-pronged test to the conduct giving rise to the injury.  The creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious.  *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d

702, 711 (9th Cir. 2008) (reinforcing *In re Su*, 290 F.3d at 1146-47 and the application of a separate analysis in each prong of "willful" and "malicious").

"Willfulness" requires proof that the debtor deliberately or intentionally injured the creditor or the creditor's property, and that in doing so, the debtor intended the consequences of his act, not just the act itself. *In re Su*, 290 F.3d at 1143. The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct. *Id.*

For conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. *Id.*

Simonsen argues that Plaintiffs' § 524(a)(6) claim is a Rule 11 sanctionable claim because Plaintiffs are only relying on Simonsen's actions prior to the April 23, 2009, Settlement Agreement and Mutual Release. Plaintiffs counter that they suffered injury when Simonsen willfully and maliciously breached not only the Settlement Agreement and Mutual Release, but also the License Agreements. As acknowledged by Simonsen, the License Agreements were entered into after the Settlement Agreement and Mutual Release. Because Simonsen's summary judgment argument focuses only on the Settlement Agreement and Mutual Release, and does not consider the subsequent License Agreements, the Court finds that material issues of fact preclude summary judgment on this claim.

IV.    523(a)(19)

Plaintiffs' fourth claim for relief is brought under § 523(a)(19)(A)(ii) and/or § 523(a)(19)(B)(i). The foregoing Code sections require that the claim stem from "common law

17

fraud, deceit, or manipulation in connection with the purchase or sale of any security; *and* (B) results, before, or, or after the date on which the petition was filed, from – (i) any judgment, order, consent order, or decree entered in any Federal or state judicial or administrative proceeding[.]"[1] As Simonsen notes in his Memorandum, "[t]he real question comes down to whether said fraud is 'in connection with the purchase or sale of any security.'"

Simonsen asserts in his Statement of Uncontroverted Facts that the default judgment entered against Simonsen and GMS Devco, LLC on May 17, 2013, stems from a Counterclaim for Injunctive and Other Relief that did not contain any "allegation of fraud, duty of loyalty claims, or security violations against Stuart Simonsen or GMS Devco LLC." The Plaintiffs' Counterclaim for Injunctive and Other Relief filed July 15, 2011, alleges breach of contract by Simonsen and GMS Devco, LLC, but does not allege any security violations. However, the Counterclaim for Injunctive and Other Relief does allege that "Simonsen is the creator of a mathematical model and back-end software that is used, together with an appropriate user interface, to trade S & P futures[.]" Plaintiffs further allege in that Counterclaim that Simonsen's Trading Software generates trading signals that "cause customer accounts to automatically make trades based upon the instructions generated by the Trading Software's models."

Following the entry of default against Simonsen and GMS Devco, LLC and after a "prove up" hearing, the Illinois court entered an Order on June 21, 2013, finding that Simonsen and

---

[1] Interestingly, Plaintiffs do not seek to except a debt from discharge under § 523(a)(19)(B)(ii), dealing with "any settlement agreement entered into by the debtor[.]" This is presumably so because the April 23, 2009 settlement agreement resolves disputes stemming from the BdS Quant Capital operating agreement and Simonsen's actions as a member and manager for BdS Quant Capital. The settlement agreement did not stem from a settlement agreement relating to the purchase or sale of any security.

GMS Devco, LLC had "breached their duties to BdS Quant Capital, LLC and BdS Quant, LLC, including but not limited to their duties of loyalty and honesty[.]" While the aforementioned counterclaim and order would not permit this Court to enter a judgment of nondischargability based on issue or claim preclusion, the Court finds there are material facts that preclude entry of summary judgment.

The Court would note that § 523(a)(19) overlaps § 523(a)(2) and Plaintiffs' § 523(a)(19) claim may become moot as the case develops.  However, for purposes of summary judgment, the Plaintiffs need only plead sufficient allegations that Simonsen's pre-petition conduct constituted a "common law fraud . . . in connection with the purchase or sale of any security . . . ."

In accordance with the above, the Court will enter a separate order providing as follows:

IT IS ORDERED that Defendant Stuart Michael Simonsen's Motion for Summary Judgment filed October 15, 2014, at docket no. 14 is denied.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana